FRED RIEPE ESTATE, Appellee, v. CITY OF BURLINGTON et al., Appellants (and two other cases).

**MUNICIPAL CORPORATIONS:** Special Assessments—Future Prospects. Future prospects and reasonable anticipations may be given due consideration in fixing the amount of a special assessment; but

the trial court's findings, on supporting testimony, as to such future prospects are influential with the court on appeal from a decree which materially reduces the assessment. So held as to agricultural lands within a city, but remote from any business center.

Headnote 1:   28 Cyc. pp. 1129, 1191 (1926 Anno.)

*Appeal from Des Moines District Court.*—JAMES D. SMYTH, Judge.

FEBRUARY 10, 1925.

ACTION in equity, to correct a special assessment. From decree reducing the assessments complained of 40 per cent, the defendant city appeals.—*Affirmed.*

*Ben P. Poor,* for appellants.

*Hirsch & Riepe,* for appellees.

STEVENS, J.—Mt. Pleasant Street from Chalfant Street in the city of Burlington lies northwesterly until it intersects with Weimer Street, from which its direction is approximately east and west. In 1922 and 1923, the appellant city caused Mt. Pleasant Street to be paved, from Chalfant Street to Roosevelt Avenue. The paving opposite the lots of appellee is of concrete, 18 feet in width, without curbing, but having dirt shoulders 4 feet in width, and a ditch on each side thereof from 2½ feet to a few inches in depth. The paving extended westward from Roosevelt Avenue to West Burlington, a town having a population of from 1,000 to 1,200. The appellee Fred Riepe Estate owns Lots 3, 4, and 5, each comprising about 10 acres, abutting on the south side of Mt. Pleasant Street. The appellee Joseph Binder owns Lots 1 and 2, which lie immediately east of the Riepe lots, and also Lots 13 and 14, abutting on the north side of Mt. Pleasant Street. These lots, except Lot 1, which is a trifle larger, also comprise about 10 acres. The appellee Nels P. Larson owns Lots 8 and 9, abutting on Roosevelt Avenue and the north side of Mt. Pleasant Street. These lots each contain about 7½ acres. All of the property described is within the corporate limits of the city of Burlington, and is used exclusively

for agricultural purposes. These lots are approximately 2½ miles from the business center of the city of Burlington, and from ½ to 1 mile from the business center of West Burlington. There is a gas main on Mt. Pleasant Street, and the street is electrically lighted. There is, however, no water or sewer service for any of these lots. There is a street car line on Mt. Pleasant Street west of Roosevelt Avenue, which branches at the intersection thereof, one line going north, and the other south, on Roosevelt Avenue.

The trial in the court below resulted in a decree reducing the assessment upon each of the lots described, 40 per cent. From this decree the city has appealed.

Some fifteen years prior to the construction of the pavement in question, the street was macadamized; but it is agreed by all of the witnesses testifying on that point that the macadam was in very bad condition immediately prior to the improvement in question. The testimony as to the value of the property involved is conflicting, the witnesses for appellant placing its value much higher than do the witnesses for appellees. The same discrepancy exists on the question of benefits. Some of the witnesses for appellant placed the benefit to the lots at $75 per acre; whereas the witnesses for appellees placed it as low as $10 or $15 per acre. Mt. Pleasant Street is the shortest and most direct line between the city of Burlington and West Burlington. The city of Burlington has a population of something less than 30,000. The Chicago, Burlington & Quincy Railway shops, the Murray Iron Works, and other industries employing large numbers of men, are located in or in the vicinity of West Burlington. None of the witnesses for appellant based their opinion as to benefits conferred by the improvement upon an actual increase in the market value of the land on account thereof, although they estimated that its effect in that respect was decisive and important. The real theory upon which the assessments were levied, and upon which the several witnesses for appellant based their opinion, is largely theoretical and speculative. The lots appear to be well located, and to present a somewhat attractive location for the laying out of an addition for residential purposes. The testimony does not show, however, any decided trend on the part of home builders to secure building lots in that

vicinity, nor does it seem to us that the tendency in that direction is likely to be materially stimulated or accelerated in the near future. The lots are valuable for agricultural purposes, and, as suggested by one of the witnesses, might be made valuable for horticultural purposes. It does not appear, however, that any substantial demand for property in Burlington for such purposes exists. The difficulty with this case and all cases of like character is that no one can accurately forecast the possibilities of the future, or do more than speculate upon the probability of a market for lots so situated, for any other than agricultural use. The law is well settled that the assessing board, in fixing the amount of an assessment to be laid upon property, may take into consideration future prospects and reasonable anticipations as to the growth and expansion of the city and the probable increase in a demand for said property. *Hahn v. City of Le Mars*, 197 Iowa 292. Other additions laid out in the city of Burlington in the vicinity of the lots in question or the industrial center lying to the west thereof have, as we gather from the testimony, improved very slowly. The most, it seems to us, that can be said of future prospects for the sale of the lots in question for residential purposes is that they are well located and suitable for such use. Burlington, as disclosed by the census reports, is not growing very rapidly; and, although a large number of residences were built therein in recent years, and there is a present demand for more residences, it is a matter of pure speculation as to whether the lots in question, even if they were platted into building lots, would attract purchasers, as contemplated by the city council and the witnesses for appellant. The reduction of 40 per cent made by the court below is, so far as this court is able to determine from the record, as nearly accurate as it is possible to make it. The only reason urged for increasing the assessment as fixed by the decree of the court below is the favorable location of the property and the prospective future expansion of the city in the direction of the industrial center established in the vicinity of West Burlington. It may transpire that the foresight of the city council and the witnesses for appellant is correct. If so, it may be conceded that the assessment as fixed by the court is too low. On the other hand, if the situation remains as it was at the time of the trial,

the assessment laid upon the lots by the city council is obviously too high. We find nothing in the record upon which to base a finding that the assessment as fixed by the court is not just and equitable, and that an assessment on a high level of benefits should be made.

It is our conclusion that the decree of the court below does substantial justice, and should not be disturbed.—*Affirmed.*

FAVILLE, C. J., and DE GRAFF and VERMILION, JJ., concur.